Richard W. DRAKE, Plaintiff–Appellant,

v.

DELTA AIR LINES, INC.,
Defendant–Appellee.

Docket No. 97–9039.

United States Court of Appeals,
Second Circuit.

Argued May 14, 1998.

Decided June 17, 1998.

Richard W. Drake, pro se, Manassas, Vermont.

Ira G. Rosenstein, Orrick, Herrington & Sutcliffe, New York City (Michael Delikat, Robert S. Whitman, Orrick, Herrington & Sutcliffe; Thomas J. Munger, Andrew J. Fisher, Delta Air Lines, Inc., on the brief), for Defendant–Appellee.

Before: FEINBERG, CARDAMONE, and CABRANES, Circuit Judges.

PER CURIAM:

Plaintiff-appellant Richard W. Drake appeals from the judgment of the United States District Court for the Eastern District of New York (Frederic Block, *Judge*) of April 26, 1996 dismissing for failure to state a claim those portions of his complaint alleging violations by defendant-appellee Delta Air Lines, Inc. ("Delta") of Federal Aviation Administration ("FAA") regulations and of Drake's Fourth Amendment rights, *see Drake v. Delta Airlines, Inc.*, 923 F.Supp. 387 (E.D.N.Y.1996) ("*Drake I*"), and from the July 28, 1997 final judgment of that same court dismissing for failure to state a claim his amended complaint alleging wrongful termination and procedural due process violations in connection with his termination, *see Drake v. Delta Air Lines, Inc.*, 1997 WL 397498 (E.D.N.Y. July 10, 1997) ("*Drake II*"). Substantially for the reasons stated in the opinions below, we affirm the judgments of the district court in all respects but one; we vacate the judgment of the district court with respect to Drake's Fourth Amendment claims (which, construed liberally, contain allegations overlooked by the district court) and remand for further proceedings.

---

1. Like the district court, we deem Drake's complaint to include the facts contained in his memorandum of law filed in response to Delta's 1996

## I.

Taking the facts alleged in plaintiff's pleadings[1] as true, as we must in reviewing a dismissal for failure to state a claim under Fed.R.Civ.P. 12(b)(6), *see Murray v. Miner*, 74 F.3d 402, 403–04 (2d Cir.1996), Drake claims the following: He was employed by Delta as a flight attendant beginning in 1991. He was tested for drugs four times between April 1993 and October 28, 1993. On October 28, 1993, Drake was required to provide a urine sample for a drug test. On November 10, 1993, he was told that there was "something wrong with his [October 28] sample," but was never supplied with written results of the drug test. He was removed from flight status and suspended on November 28, 1993, and one month later he was asked to resign; when he refused to do so, his employment was terminated. Drake was informed in February 1994 that a Delta administrative hearing (in which he had not been permitted to personally participate) had confirmed his termination.

With respect to the October 28, 1993 drug test, the first laboratory to which Drake's urine sample was sent found the sample to be "unsuitable for testing." The sample was then sent to a second laboratory to determine if it had been adulterated with a substance designed to prevent the detection of illegal drugs. (Delta states, but did not supply Drake with documentation indicating, that the second test established that the sample had in fact been adulterated.) Drake contends that Delta's procedures in connection with both the original test and the subsequent test for adulterants involved multiple violations of FAA drug testing regulations, *see* 14 C.F.R. pt. 121, app. I (adopting procedures specified in 49 C.F.R. pt. 40).

## II.

 We affirm, substantially for the reasons stated in its thoughtful and detailed opinions below, the district court's dismissal under Fed.R.Civ.P. 12(b)(6) of (i) Drake's claims based on Delta's alleged violations of drug testing regulations, because there is no

motion to dismiss. *See Drake I*, 923 F.Supp. at 388 (citing *Le Grand v. Evan*, 702 F.2d 415, 416 n. 3 (2d Cir.1983)).

implied private right of action for employees under those regulations,[2] *see Drake I,* 923 F.Supp. at 389–393; and (ii) Drake's statutory, common law, and constitutional claims based on Delta's allegedly wrongful termination of his employment because, *inter alia,* Drake was an at-will employee and Delta was not a state actor with respect to the employment action, *see Drake II,* 1997 WL 397498, at *2–*4.

The district court's analysis of Delta's alleged Fourth Amendment violations, however, rests on a key assumption about the nature of Drake's complaint that is colorably challenged on appeal—namely, the assumption that Drake took issue with only the *second* test of his October 28, 1998 urine sample. *See Drake I,* 923 F.Supp. at 394 ("Drake, however, does not take issue with the initial test, but rather, challenges Delta's subsequent test for adulteration."). Having concluded that the Fourth Amendment was implicated in the second test, the district court held that the test was nevertheless a "reasonable" intrusion on Drake's Fourth Amendment interests. That conclusion of "reasonableness" rested in large part on the reasoning that "[t]o the extent that Drake retained any privacy interest in his urine sample after it had been tested the first time"—the propriety of which test the district court took to be unchallenged—"that interest was minimal." *Id.* at 396. More specifically, the district court noted that the second test did not involve any additional physical invasion beyond that already occasioned by the original test. *See id.* at 396–97.

On appeal, however, Drake objects to the district court's characterization of his complaint, and contends that he did indeed challenge the original test as well. It is certainly the case that Drake's papers before the district court focused principally, and indeed overwhelmingly, on his assorted objections to Delta's procedures in connection with the second test for adulterants. In light of the rather impenetrable state of some of Drake's pleadings, it is understandable that the district court—which was commendably conscientious in construing and resolving his claims—would have read the complaint as it did. However, Drake now points to a portion of his *pro se* complaint that, when construed liberally, *see Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972), can be read to take issue with the original drug test as well. *See* Plaintiff's Complaint (Dec. 27, 1994) at 2 ("Delta Air Lines violated the Plaintiff's right that drug testing be done on a 'RANDOM' basis. Delta Air Lines manipulated the random DOT testing for [its] own agenda which made the testing not random, but intentionally oppressive and discriminatory.")

If Drake's complaint is construed to raise objections not only to the second test for adulterants, but also to the original drug test itself, we cannot say that "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Northrop v. Hoffman of Simsbury, Inc.,* 134 F.3d 41, 44 (2d Cir.1997). Taking Drake's allegations (liberally construed) as true for purposes of the motion to dismiss, he has pled a legally cognizable claim for violation of the Fourth Amendment. Although the Fourth Amendment prohibits only "unreasonable" searches and seizures,[3] *see Skinner v. Railway Labor Executives' Ass'n.,* 489 U.S. 602, 619, 109 S.Ct. 1402, 103 L.Ed.2d 639 (1989), Drake's allegation that the October 28, 1993 test was not randomly administered is sufficient to make out a *prima facie* claim of unreasonableness. Warrantless drug urinalysis testing of employees in safety-sensitive jobs may be consonant

---

2. We note, as did the district court, that Drake could have sought redress of the alleged regulatory violations through administrative avenues, such as by filing a complaint with the Secretary of Transportation. *See Drake I,* 923 F.Supp. at 393 n. 9 (citing 49 U.S.C. § 46101(a)).

3. As the district court noted, *see Drake I,* 923 F.Supp. at 394, and as counsel for Delta conceded several times at oral argument before this Court, the sample collection and initial drug test, which were carried out under the authority of FAA mandatory drug testing regulations, implicated the Fourth Amendment; that is, Delta was a "state actor" for Fourth Amendment purposes when it required Drake to submit to the October 28, 1993 test.

with the Fourth Amendment where part of a systematic, uniformly applied testing program (such as random testing), *see Skinner,* 489 U.S. at 624, 109 S.Ct. 1402; *National Treasury Employees Union v. Von Raab,* 489 U.S. 656, 665, 109 S.Ct. 1384, 103 L.Ed.2d 685 (1989), or where based on the employer's individualized "reasonable suspicion" of drug use by the employee, *see Coppinger v. Metro–North Commuter R.R.,* 861 F.2d 33, 35–36 (2d Cir.1988). *See also Benavidez v. City of Albuquerque,* 101 F.3d 620, 624 (10th Cir.1996); *Ford v. Dowd,* 931 F.2d 1286, 1290–92 (8th Cir.1991); *Fraternal Order of Police, Lodge No. 5 v. Tucker,* 868 F.2d 74, 77 (3d Cir.1989). However, Drake's complaint can be construed to allege that Delta's collection and first test of his urine sample were not administered within the parameters of its systematic testing program, and the record is silent (as is Delta) as to any basis, arising prior to the test's administration, for a reasonable suspicion that Drake was using drugs.

■ Whether or not the October 28, 1993 collection and testing of Drake's urine sample was conducted as part of Delta's systematic, FAA-mandated, random drug testing program, and whether or not Delta possessed any reasonable suspicion of Drake, are factual questions to be taken up on summary judgment or at trial. In reviewing the dismissal on the pleadings, however—where we are required to construe liberally Drake's complaint, accept as true his allegations, and draw all reasonable inferences in his favor—we cannot conclude that Drake has failed to state a facially cognizable claim of a Fourth Amendment violation in connection with the original drug test. Additionally, because Drake has stated a claim with respect to the original sample collection and testing, he has also stated a Fourth Amendment claim with respect to the further testing for adulterants of that allegedly unconstitutionally obtained sample.

Accordingly, while affirming in all other respects, we vacate the judgment of the district court insofar as it dismissed Drake's Fourth Amendment claims under Fed. R.Civ.P. 12(b)(6), and we remand for further proceedings in connection with those claims.

On remand, the district court might wish to consider whether Drake's action merits the appointment of counsel under its local procedures governing the appointment of attorneys in *pro se* civil actions.