**Michael J. HASON, M.D. Plaintiff,**

v.

**OFFICE OF PROFESSIONAL MEDICAL CONDUCT, Medical Board of the State of New York, Department of Health of the State of New York and Commisioner; Irving S. Caplin, Dr. Teresa Briggs, and Dr. Fred Levinson, in their individual and official capacities. Defendants.**

**No. 02 CIV. 10007(SHS).**

United States District Court, S.D. New York.

April 19, 2004.

Michael J. Hanson, Plantation, FL, Pro se.

*OPINION AND ORDER*

STEIN, District Judge.

Plaintiff was licensed to practice medicine in New York in 1993 and is also an attorney licensed to practice law in this state. He has brought this action, *pro se,*

seeking declaratory and injunctive relief relating to the revocation of his New York state medical license in November 1999, as well as compensatory and punitive damages. Defendants have now moved to dismiss the Amended Complaint pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction and pursuant to Rule 12(b)(6) for failure to state a claim upon which relief may be granted. For the reasons set forth below, defendants' motion is granted and the Amended Complaint is dismissed with prejudice.

*BACKGROUND*

In August 1999, the New York State Department of Health initiated a proceeding against Dr. Michael J. Hason, charging him with medical misconduct pursuant to New York Education Law § 6530(9)(d).[1] That administrative action against plaintiff was premised on a February 24, 1998 decision of the Medical Board of California denying his application for a California medical license on the ground, *inter alia,* that he was "not emotionally stable [enough] to safely practice medicine." *See* Statement of Charges in In the Matter of Michael Jeffrey Hason, M.D., (Appendix A to Determination and Order, attached to Declaration of Scott Fisher in Support of Defendants' Motion to Dismiss at Exhibit B); Proposed Decision in the Matter of Michael J. Hason, OAH No. N–9704117 at 4 (attached to Fisher Declaration at Exhibit A). In the New York proceeding, Hason was charged with violating New York Education Law § 6530(7): "[p]racticing the profession while impaired by alcohol, drugs, physical disability, or mental disability."

An expedited hearing was held in New York in September of 1999 before a three-member panel of the New York Board of Professional Medical Conduct (the "BPMC") pursuant to New York Public Health Law § 230(10)(p). At this hearing, plaintiff appeared *pro se* and offered testimony of his therapist, David Molko, M.S.W., and a letter from his treating psychiatrist, Robert M. Petrovich M.D., in support of Hason's contention that although he had been diagnosed with "major depression," that condition was "currently in remission" and that he would be able to "safely practice medicine." *See* Transcript of Referral Hearing dated Sept. 2, 1999 at 4–9 (attached to Fisher Declaration at Exhibit D); Letter from Dr. Petrovich dated August 29, 1999 (attached to Fisher Declaration at Exhibit C).

On November 9, 1999, the panel issued its Determination and Order (the "BPMC decision"). The panel concluded the California Medical Board "appropriately denied [plaintiff's] application ... based on [his] psychiatric history." *See* Determination and Order at 3 (attached to Fisher Declaration at Exhibit B). In its consideration of the appropriate penalty, the BPMC panel wrote that it was "not convinced by Mr. Molko's testimony that [plaintiff] was ready to resume all duties and responsibilities involved in the practice of medicine." *Id.* at 5. It also concluded that revocation of plaintiff's medical license would serve "to protect the safety of the public until such time that [he] can demonstrate that he is fully rehabilitated and is ready to resume all duties and responsibilities as a physician in the state of New York." *Id.* Pursuant to New York Public Health Law § 230(10)(p) and New York Education Law § 6530(9)(d), the BPMC panel then revoked plaintiff's New York medical license. *Id.* at 6.

---

1. Under this section, a New York-licensed physician commits professional misconduct by "having his or her application for a license refused ... where the conduct resulting in ...refusal ... of an application for a license ...would, if committed in New York state, constitute professional misconduct under the laws of New York state."

Plaintiff next requested the Administrative Review Board of the New York Department of Health (the "ARB") to nullify or modify the BPMC decision pursuant to New York Public Health Law § 230(c)(4). Among the errors Hason alleged to have taken place in the BPMC proceeding was that the BPMC panel violated provisions of the Americans with Disabilities Act of 1990 (the "ADA"), 42 U.S.C. § 12101 *et. seq.* *See* Administrative Review Board Determination and Order No. 99–273 at 3 (attached to Fisher Declaration at Exhibit E). However, the ARB held that it lacked jurisdiction to entertain allegations of ADA violations and wrote that "we leave [Hason] to raise those issues in the courts." *Id.* at 4. The ARB also sustained the BPMC panel's finding that plaintiff was unfit to practice medicine under N.Y. Educ. Law § 6530(9)(d) because the BPMC was entitled to rely on the holding of the California decision. Nevertheless, the ARB disagreed with the penalty imposed by the BPMC—revocation of plaintiff's medical license—and imposed instead a suspension of his medical license for "one year certain and for such time thereafter until [plaintiff] can demonstrate to a BPMC Committee [his] fitness to return to practice." *Id.* at 4–6.

Plaintiff appealed that ARB decision to the Appellate Division of the New York Supreme Court, Third Judicial Department, pursuant to Article 78 of New York Civil Procedure Law and Rules. In his legal memorandum in that Article 78 proceeding, Hason argued, among other points, that: 1) the BPMC and ARB decisions discriminated against him on the basis of his disability in violation of the ADA and New York Human Rights Law, New York Executive Law § 296; 2) the BPMC hearing and the ARB review deprived him of the right to due process because he was allocated the ultimate burden of proof;

and 3) the BPMC panel members acted out of bias against him and violated his right to equal protection. *See* Petitioner Dr. Hason's Amended Brief at 3–16, 16–19, 20–22 (attached to Fisher Declaration at Exhibit I).

As a preliminary matter, the Appellate Division noted in the resulting opinion that, in Article 78 proceedings, its jurisdiction was limited to review of the ARB decision and, therefore, it lacked authority to review the BPMC decision. *See In the Matter of Hason v. Department of Health,* 295 A.D.2d 818, 822, 744 N.Y.S.2d 86 (3rd Dept., 2002) ("to the extent that petitioner challenges the findings of the Hearing Committee, we note that our review of the Hearing Committee's decision is precluded as petitioner sought review of such decision from the ARB") (internal citations omitted). Substantively, the Appellate Division concluded that the ARB decision had "a rational basis which is factually supported and was not arbitrary and capricious, affected by an error of law or an abuse of discretion" and affirmed the ARB's finding as to plaintiff's professional misconduct. *Id.* The Appellate Division further found plaintiff's arguments of lack of due process and of bias to be "unavailing." *Id.* With respect to the penalty imposed, however, the Appellate Division held that the indefinite suspension of plaintiff's medical license imposed by the ARB exceeded the ARB's statutory authority. *See id.* Accordingly, the Appellate Division remitted the matter to the ARB for reconsideration of an appropriate penalty.

Upon remittal from the Appellate Division, the ARB in turn remanded the proceeding in September 2002 to the BPMC panel in order to gather "additional evidence or testimony regarding [plaintiff's] mental status" and to provide a new penalty recommendation. *See* New York Department of Health Administrative Review Remand Order No. 99–273R at 2 (attached

to Fisher Declaration at Exhibit F). On remand, the BPMC panel ordered plaintiff to submit to a psychiatric examination by Melvin Steinhardt M.D., who then issued a report in May of 2003. Approximately two months later, the BPMC recommended, based in part upon Dr. Steinhardt's report, that plaintiff "should be allowed to practice medicine in New York upon the condition that he remain on the appropriate medication and continue psychotherapy" and that such monitoring should continue for three years. *See* Supplemental Determination in the Matter of Michael Jeffery Hanson M.D. (the "Supplemental Determination") at 8 (attached to Reply Declaration of Scott Fisher at Exhibit 1).

On the basis of that recommendation by the BPMC, the ARB issued a new Determination and Order in October of 2003 that permitted plaintiff to practice medicine "if [he] remained on appropriate medication and continued with psychotherapy," along with other conditions. *See* ARB Determination and Order dated October 24, 2003 ("2003 ARB Order") at 6–7 (attached to Letter of Assistant Attorney General James M. Hersler dated February 26, 2004). In addition, the 2003 ARB Order placed plaintiff on probation for five years and restricted his practice to a hospital setting, rather than permitting him to engage in a solo practice. *See* 2003 ARB Order at 7.

Plaintiff instituted this action on November 14, 2002 to challenge the revocation of his New York medical license—11 months prior to the issuance of the 2003 ARB Order. Plaintiff's Amended Complaint alleges that the BPMC decision violated plaintiff's rights under 1) the Americans with Disabilities Act ("ADA"), 2) the Rehabilitation Act of 1974,[2] 29 U.S.C. § 701 *et.*

*seq.* and 3) the due process clause of the Fourteenth Amendment to the United States Constitution. He fails to identity any particular provision of the ADA or the Rehabilitation Act that he claims had been violated. Plaintiff also challenges the constitutionality of New York Education Law § 6330(10)(d) under the due process clause of the Fourteenth Amendment on the ground that the statute impermissibly places the burden of proof on a respondent in a BPMC proceeding. Finally, plaintiff claims that the individual defendants—members of the BPMC panel—deprived him of the right to substantive due process in violation of 42 U.S.C. § 1983 and also conspired to deprive him of his civil rights in violation of 42 U.S.C. § 1985. Plaintiff seeks declaratory and injunctive relief as well as compensatory and punitive damages.

Defendants offer a variety of arguments in support of their motion to dismiss, including that, in light of Appellate Division decision in *In the Matter of Hason,* 295 A.D.2d 818, 744 N.Y.S.2d 86, application of the *Rooker–Feldman* doctrine requires dismissal of this action for lack of subject matter jurisdiction. Defendants also contend that plaintiff's claims are barred by the statute of limitations because the initial complaint was filed on November 14, 2002, more than three years after the BPMC decision had been issued on November 9, 1999. *See* Memorandum of Law in Support of Defendants' Motion to Dismiss the Complaint at 1–2.

*DISCUSSION*

A. *Legal Standards*

1. Lack of Subject Matter Jurisdiction

■ When defendants move to dismiss a complaint pursuant to Fed.R.Civ.P.

---

2. In his second cause of action, plaintiff alleges violation of the Rehabilitation Act initially but concludes with a plea for remedies under the ADA. This Court views this as an apparent typographical error and will construe the second cause of action as seeking relief under Section 504 the Rehabilitation Act.

12(b)(1) for lack of subject matter jurisdiction, a "[p]laintiff bears the burden of showing by a preponderance of the evidence that subject matter jurisdiction exists." *APWU v. Potter*, 343 F.3d 619 (2d Cir.2003) (internal citations omitted). In addition to facts contained in the pleadings, this Court can also consider other evidence contained in affidavits or public documents. *See Kamen v. American Tel. & Tel. Co.*, 791 F.2d 1006 (2d Cir.1986). All material factual inferences will be construed in the plaintiff's favor; *see Makarova v. United States*, 201 F.3d 110, 113 (2d Cir.2000); however, "argumentative inferences favorable to the party asserting jurisdiction should not be drawn." *Atlantic Mutual Insurance Co. v. Balfour Maclaine Int'l Ltd.*, 968 F.2d 196, 198 (2d Cir.1992) (internal citations omitted).

### 2. Failure to State a Claim

In evaluating a Fed.R.Civ.P. 12(b)(6) motion to dismiss a complaint, this Court looks to facts contained in the pleadings, including documents attached to or referenced in the Amended Complaint, as well as public records such as administrative decisions in California and New York pertaining to plaintiff's medical license. *See Taylor v. Vermont Dep't of Educ.*, 313 F.3d 768, 776 (2d Cir.2002); *Cortec Indus., Inc. v. Sum Holding, L.P.*, 949 F.2d 42, 47 (2d Cir.1991); *Cameron v. Church*, 253 F.Supp.2d 611, 618 (S.D.N.Y.2003). This Court presumes that the facts alleged in the Amended Complaint are true and draws all reasonable inferences in the plaintiff's favor. *See Lee v. Bankers Trust Co.*, 166 F.3d 540, 543 (2d Cir.1999). Plaintiff's claim may be dismissed only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Drake v. Delta Air Lines, Inc.*, 147 F.3d 169, 171 (2d Cir.1998) (*quoting Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

### B. *Subject Matter Jurisdiction and the Rooker–Feldman Doctrine*

Defendants' motion to dismiss the complaint for lack of subject matter jurisdiction will be addressed at the outset because it concerns a court's "very power of the court to hear case." *W. 95 Housing Corp. v. N.Y. City Dep't of Housing Preservation and Development*, 01 Civ. 1345, 2001 WL 664628 at *4, 2001 U.S. Dist. LEXIS 7784 at *9–10 (S.D.N.Y. Jun. 12, 2001) (*citing United States ex rel. Kreindler & Kreindler v. United Tech. Corp.*, 985 F.2d 1148, 1155–56 (2d Cir.1993)); *see also Ruhrgas AG, v. Marathon Oil Co.*, 526 U.S. 574, 584–585, 119 S.Ct. 1563, 143 L.Ed.2d 760 (1999) (holding that the doctrine of separation of powers requires resolution of jurisdictional issues before a court examines the merits of an action). Defendants contend that this Court is precluded from exercising subject matter jurisdiction in this action pursuant to the *Rooker–Feldman* doctrine because the Appellate Division has already considered plaintiff's legal theories and has found them to be without merit. *See In the Matter of Hason*, 295 A.D.2d 818, 744 N.Y.S.2d 86.

The *Rooker–Feldman* doctrine, named after the actions of *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415, 44 S.Ct. 149, 68 L.Ed. 362 (1923) and *District of Columbia Ct. of Appeals v. Feldman*, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1982), holds that "inferior federal courts have no subject matter jurisdiction over cases that effectively seek review of judgment of state courts and that federal review, if any, can occur only by way of a certiorari petition to the Supreme Court." *Moccio v. New York State Office of Court Admin.*, 95 F.3d 195, 197 (2d Cir.1996). This doctrine "reflects the principle set forth in 28 U.S.C. § 1257 that the Supreme Court is the only federal court with jurisdiction" to

review state court judgments. *Kropelnicki v. Siegel,* 290 F.3d 118, 128 (2d Cir. 2002). The *Rooker–Feldman* doctrine "bars those claims that were adjudicated in a prior state court action, as well as those claims that are 'inextricably intertwined' with the state court judgment." *Santini v. Connecticut Hazardous Waste Management Service,* 342 F.3d 118 (2d Cir.2003) (*quoting Moccio* 95 F.3d at 198–99).

As the Second Circuit has observed, whether an issue is "inextricably intertwined" with a claim raised in state proceedings is easy to identify at the outer limits. *See Moccio* 95 F.3d at 198–199. "If the precise claims raised in a state court proceeding are raised in the subsequent federal proceeding, *Rooker–Feldman* plainly will bar the action." *Id.* In contrast, if an issue was "never presented in the state court proceedings and the plaintiff did not have an opportunity to present [it] in those proceedings, [it is] not "inextricably intertwined" and therefore not barred by *Rooker–Feldman.*" *Id.* at 199.

To determine the status of an issue falling between those two boundaries, this Court can seek guidance from the principle of *collateral estoppel* under state law— New York law for this action. See *DiBlasio v. Novello,* 344 F.3d 292, 296 (2d Cir. 2003). Accordingly, a claim asserted in this action is precluded pursuant to the *Rooker–Feldman* doctrine only if "(1) [it] was actually and necessarily decided [by the Appellate Division], and (2) [plaintiff]

had a full and fair opportunity to litigate the issue [that] issue in [his Article 78] proceeding." *Id.* (*quoting Colon v. Coughlin,* 58 F.3d 865, 869 (2d Cir.1995)); *see also Juan C. v. Cortines,* 89 N.Y.2d 659, 667, 657 N.Y.S.2d 581, 679 N.E.2d 1061 (1997).

In his Article 78 proceeding, plaintiff addressed three arguments to the Appellate Division that are relevant to this action. Applying the principles identified above, this Court finds that plaintiff's first, second, third and fifth causes of action are based on claims that have either been presented to and decided by the Appellate Division in plaintiff's Article 78 proceeding, or were otherwise "inextricably intertwined" with a claim that has been presented to and opined upon by the Appellate Division. As set forth below, those causes of action must therefore be dismissed pursuant to the *Rooker–Feldman* doctrine.[3] *See Kropelnicki,* 290 F.3d at 128 (*citing Feldman,* 460 U.S. at 482–83 n. 16, 103 S.Ct. 1303); *Moccio,* 95 F.3d at 198.

#### 1. The First and Second Causes of Action Are Barred by the *Rooker–Feldman* Doctrine

■ Plaintiff alleges, in his first and second causes of action, violations of his rights secured under the ADA and the Rehabilitation Act but does not specify the nature of those claims. Construing the Amended Complaint in a light most favorable to plaintiff, those causes of action

---

**3.** This Court addresses the jurisdictional question at the outset pursuant to *Ruhrgas,* 526 U.S. 574, 119 S.Ct. 1563, and dismisses the first, second, third, and fifth causes of action for lack of subject matter jurisdiction. It should be noted that those causes of actions are also barred by their respective statutes of limitations for the reasons set forth in Section II.C *infra.* See *Harris v. City of New York,* 186 F.3d 243, 247–248 (2d Cir.1999) (a cause of

action arising under the Rehabilitation Act is subject to the same three-year limitations period as Section 1983 actions in New York); *Downs v. Massachusetts Bay Transportation Authority,* 13 F.Supp.2d. 130, 136 (D.Mass. 1998) (holding that a cause of action arising under Title II of the ADA is subject to the relevant state's statute of limitations for personal injuries claims).

state claims both for unlawful discrimination on the basis of plaintiff's disability and for failure by the BPMC or the ARB to provide him with reasonable accommodation. *See Henrietta v. Bloomberg*, 331 F.3d 261, 272–277 (2d Cir.2003) (holding that the ADA and the Rehabilitation Act prohibits both "disparate impact" on the basis of disability and the failure to provide "reasonable accommodation" to individuals with disability). "Because Section 504 of the Rehabilitation Act and the ADA impose identical requirements," this Court will consider plaintiff's first and second causes of action in tandem. *Rodriguez v. City of New York*, 197 F.3d 611, 618 (2d Cir.1999); *see also Henrietta*, 331 F.3d at 272; *Weixel v. New York City Bd. of Educ.*, 287 F.3d 138, 146 (2d Cir.2002) (the ADA and the Rehabilitation Act operate with substantially similar standards).

In his Article 78 proceeding before the Appellate Division, plaintiff alleged that the BPMC decision violated his rights under the ADA. Specifically, he contended that he had suffered unlawful discrimination on the basis of his actual or imputed disability. *See* Petitioner Dr. Hason's Amended Brief at 3 (" [i]t cannot be gainsaid that the sanction in New York was imposed, because [the BPMC and the ARB] felt that Dr. Hason had a disability, specifically, his prior bouts of depression ..."). Furthermore, plaintiff also argued before the Appellate Division that the BPMC and the ARB failed to provide him with reasonable accommodation based on his needs as a person with disability. *See id.* at 13 (the BPMC and ARB decisions [failed] "to address and consider the requirements of the Americans with Disabilities Act (or the Rehabilitation Act, or the New York Human Rights Law)"). The Appellate Division took note of those arguments but found them to be without merit. *In the Matter of Hason*, 295 A.D.2d at 822, 744 N.Y.S.2d 86 ("remaining claims ...

are unavailing, including those alleging bias").

Accordingly, because plaintiff's first and second causes of action—alleging violations of the ADA and the Rehabilitation Act on the basis of unlawful discrimination he suffered or for the failure by the BPMC to provide reasonable accommodation—state claims that have been resolved against him by the Appellate Division, this Court lacks jurisdiction to consider the merits of those causes of action pursuant to the *Rooker–Feldman* doctrine. *See DiBlasio*, 344 F.3d at 296. They are therefore dismissed pursuant to Fed.R.Civ.P. 12(b)(1).

2. The Third Cause of Action Is Barred by the *Rooker–Feldman* Doctrine

■ Plaintiff's third cause of action alleges selective enforcement by the BPMC panel in violation of his right to due process and equal protection. While the Appellate Division did not review the adequacy or fairness of the proceeding against plaintiff before the BPMC panel, plaintiff had made this allegation in his request to the ARB. *See* ARB Determination and Order at 3 ("[Hason] also alleges that the Committee decided a priori to impose the harshest sanction ..."). The ARB rejected those allegations and sustained the findings of the BPMC panel that plaintiff had violated New York Education Law § 6359(10)(d). *See id.* at 4 ("the [BPMC] Committee and their Administrative Officer acted appropriately in refusing to allow [Hason] to relitigate the California Board's findings ..."). The ARB's decision on plaintiff's professional misconduct, including this conclusion, was in turn upheld by the Appellate Division. *See In the Matter of Hason*, 295 A.D.2d at 822, 744 N.Y.S.2d 86. ("we conclude that the ARB's determination sustaining the charge of professional misconduct ... has a rational basis which is factually supported and was not

arbitrary and capricious, affected by an error of law or an abuse of discretion"). Accordingly, this Court is precluded from considering the merits of this cause of action pursuant to the *Rooker–Feldman* doctrine. *See Moccio*, 95 F.3d at 198–99 ("[i]f the precise claims raised in a state court proceeding are raised in the subsequent federal proceeding, *Rooker–Feldman* plainly will bar the action"). It is therefore dismissed with prejudice pursuant to Fed.R.Civ.P. 12(b)(1).

### 3. The Fifth Cause of Action Is Barred by the *Rooker–Feldman* Doctrine

Plaintiff's fifth cause of action seeks to invalidate the New York Education Law § 6359(10)(d) for violation of his right to due process. The legal theories underlying this claim were also presented in plaintiff's submission in his Article 78 proceeding. *See* Petitioner's Amended Brief at 17–18 ("the OPMC [BPMC] should not be permitted to rely on the California decision to meet its burden of proof. . . . the use of the California proceeding as a predicate for sanctioning in New York violated procedural due process as applied to Dr. Hason"). The Appellate Division wrote specifically that "[p]etitioner's remaining claims raised under the rubric of denial of due process are unavailing . . ." *See In the Matter of Hason*, 295 A.D.2d at 822, 744 N.Y.S.2d 86. Because a New York state court has already considered the claim presented in plaintiff's fifth cause of action and resolved it against plaintiff, this Court lacks jurisdiction, pursuant to the *Rooker–Feldman* doctrine, to consider its merits. Therefore, it will be dismissed with prejudice pursuant to Fed.R.Civ.P. 12(b)(1). *See Moccio*, 95 F.3d at 198–99.

### 4. The Fourth Cause of Action Is Not Barred by the *Rooker–Feldman* Doctrine

Plaintiff's fourth cause of action alleges violation of his right to substantive due process by the individual members of the BPMC panel. Although plaintiff made such accusations against the BPMC panel in his submission in his Article 78 proceeding, the Appellate Division, as acknowledged in its decision, lacked jurisdiction to review directly the proceeding before the BPMC panel. *See In the Matter of Hason*, 295 A.D.2d at 822, 744 N.Y.S.2d 86. The record also does not reveal that the Appellate Division's review of the ARB decision necessitated consideration of those questions. Accordingly, because the claims contained in plaintiff's fourth cause of action may not have been considered by the Appellate Division and are not "inextricably intertwined" with any conclusion that the Appellate Division has made, application of the *Rooker–Feldman* doctrine does not deprive this Court of jurisdiction to entertain the merits of this cause of action. *See DiBlasio*, 344 F.3d at 296. It is, however, as described below, barred by the statute of limitations.

### C. *Failure to State a Claim*

#### 1. Statute of Limitations

Plaintiff's sole remaining claim, the fourth cause of action, is asserted pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1985 and alleges violation of his substantive due process rights. This cause of action is subject to a three-year statute of limitations period in New York. *See Pearl v. City of Long Beach*, 296 F.3d 76, 79 (2d Cir.2002) (the applicable statute of limitations period is, for a Section 1983 claim, "found in the general or residual [state] statute [of limitations] for personal injury actions") (*citing Owens v. Okure*, 488 U.S. 235, 249–50, 109 S.Ct. 573, 102 L.Ed.2d 594 (1989)); *Jaghory v. New York State Dep't of Educ.*, 131 F.3d 326, 331 (2d Cir.1997) (holding that a three-year limitations period applies to claims arising under both 42 U.S.C. § 1983 and 42 U.S.C. § 1985); *see*

*also* New York C.P.L.R. § 214(5) (three-year statute of limitations period applicable to personal injury suits). Because the BPMC decision was issued on November 9, 1999, the fourth cause of action is deemed time-barred if it was filed in the Southern District on or after November 10, 2002.

█ Plaintiff claims that the initial complaint in this action "was filed . . . in this Court in or about early October 2002." *See* Plaintiff's Memorandum of Law in Opposition to Motion to Dismiss at 6. However, not only does plaintiff not offer any support for that statement, but also all the available facts belie that assertion. First, the initial complaint itself was signed and dated "November 8, 2002." *See* Complaint and Demand for Jury Trial at 6. The Court is unable to fathom how a complaint dated in November could have been filed the month before the date it was signed by plaintiff. Moreover, the Pro Se Office of the Southern District of New York stamped the initial complaint as "received" on November 14, 2002. That date is certainly consistent with plaintiff's having mailed it from his home in Florida on or about November 8, 2002. Therefore, this Court cannot credit plaintiff's unsubstantiated allegation and instead deems November 14, 2002 as the date of the filing of this action. *See Chira v. Columbia University in New York City,* 289 F.Supp.2d 477, 482 n. 10 (S.D.N.Y.2003) (holding that the date upon which a *pro se* complaint is submitted to the Pro Se Office is "the relevant date for the statute of limitations"). Accordingly, plaintiff's fourth cause of action is time-barred and will be dismissed with prejudice pursuant to Fed.R.Civ.P. 12(b)(6). *See Cantor Fitzgerald Inc. v. Lutnick,* 313 F.3d 704, 713 (2d Cir.2002).

## CONCLUSION

For the reasons set forth above, plaintiff's first, second, third and fifth causes of actions are dismissed with prejudice for lack of subject matter jurisdiction and plaintiff's fourth cause of action is dismissed with prejudice for being time-barred. Accordingly, defendants' motion to dismiss the Amended Complaint is granted and the Amended Complaint is dismissed in its entirety.

SO ORDERED.